Matthew R. Bainer, Esq. (SBN 220972)
**THE BAINER LAW FIRM**
1901 Harrison St., Suite 1100
Oakland, California 94612
Telephone:     (510) 922-1802
Facsimile:     (510) 844-7701
mbainer@bainerlawfirm.com
Attorneys for Plaintiffs Tremaine Wilson and Lauren Becker

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREMAINE WILSON and LAUREN BECKER, individually, and on behalf of other members of the general public similarly situated, and as aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"),<br><br>                Plaintiff,<br><br>        vs.<br><br>SKYWEST AIRLINES, INC., a Utah corporation; and DOES 1 through 100, inclusive,<br><br>                Defendants. | Case No. 3:19-cv-1491-VC<br><br>[<br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>Date:          January 22, 2022<br>Time:         2:00 p.m.<br>Place:        Courtroom 4 |

**TO THE HONORABLE COURT, ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 20, 2022, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 4 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Vince Chhabria presiding, Plaintiffs Tremaine Wilson and Lauren Becker will and hereby do move for an Order certifying this case as a class action against Defendants SkyWest Airlines, Inc. ("Defendants" or "SkyWest").

Specifically, Plaintiffs request that this Court, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3):

A.      Certify the following Class:  All "Flight Attendants," who were "domiciled" at a California airport, as these terms are defined by the Flight Attendant Policy Manual, at any time during the period from February 2015 until the date of certification; and

B.      Appoint Plaintiffs Tremaine Wilson and Lauren Becker as representatives for the proposed Class.

C.      Appoint The Bainer Law Firm as Class Counsel for the proposed Class.

Plaintiffs' Motion for Class Certification will be made on the grounds that the proposed Class is ascertainable and so numerous that joinder of all members is impracticable; that there are questions of law or fact common to the claims herein; that Plaintiffs share interests and claims typical to all other members of the proposed Class and Subclasses; that Plaintiffs are members of the proposed Class that they seek to represent and are able to fairly and adequately protect their members' interests; that The Bainer Law Firm are qualified to represent Class members in this litigation as Class Counsel; that questions of law or fact common to each proposed Subclass member predominate over any questions affecting only individual class members; and that the class action device is the superior method of adjudication to other available methods.

This Motion is based on this Notice, the concurrently filed Memorandum of Points and Authorities; the Declaration of Matthew R. Bainer; as well as the other records, pleadings and papers filed in this action; and upon any other documentary and oral evidence or argument that may be presented to the Court at the hearing.

1

Dated:  October 25, 2021                    Respectfully submitted,

2

3                                                THE BAINER LAW FIRM

4

                                              By: */s/ Matthew R. Bainer*
5                                                  Matthew R. Bainer
                                                   Attorneys for Plaintiffs
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF FACTS ..................................................................................2

    A.   The Parties ..................................................................................................2

    B.   Flight Attendants' Standardized Training Program ....................................2

    C.   SkyWest's Nationwide Flight Operations .................................................3

    D.   Flight Attendant's Uniform Duties ............................................................4

    E.   SkyWest's Policies Prohibiting Off-Duty Breaks .....................................4

III.  ARGUMENT .......................................................................................................5

    A.   The Standard For Class Certification .........................................................5

    B.   The Class Is Ascertainable and Its Members Sufficiently Numerous .........6

    C.   Common Questions Of Law Or Fact Predominate Plaintiffs' Theories ......7

        2.   Plaintiffs' Meal and Rest Period Claims ............................................8

        3.   Plaintiffs' Claims are Susceptible to Common Proof .......................13

    D.   Plaintiffs Claims Are Typical of The Class ..............................................16

    E.   Plaintiffs and Counsel Will Adequately Represent The Class ..................17

    F.   Class Treatment Is Superior To A Multitude Of Individual Lawsuits Because

       Plaintiffs' Claims May Be Adjudicated On Common Proof ......................17

    1.   Class Treatment Is the Most Efficient and Beneficial Structure to Resolve this  Dispute ................18

    2.   This Action Is Manageable as a Class Action. ...................................19

IV.   CONCLUSION ..................................................................................................20

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 967 (9th Cir. 2013)……………….................7, 13

*Alonzo v. Maximus, Inc.*, 275 F.R.D. 513 (C.D. Cal. 2011) ..............................................6

*Amchem Products, Inc., v. George Windsor,* 521 U.S. 591 (1997) ....................................7

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S.Ct. 1184, 1194 (2013)……………....6, 14

*Anderson v. Mt. Clemens Pottery*, 328 U.S. 680 (1946)………………………………...19

*Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550 (S.D. Cal. 2013)………………………....8

*Bernstein v. Virgin Am., Inc.* 2016 U.S.Dist.LEXIS 154326, at 40

(N.D. Cal. 2016)…………………………………………………………...…14, 15

*Bernstein v. Virgin Am., Inc.* 3 F.4th 1127, 1144 (9th Cir. 2021)……………………….15

*Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431 (C.D. Cal. 2014)...................................... 6, 14

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010)............................... 10, 13

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985)………………………………………5

*Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 539 (N.D. Cal. 2012)………………..…20

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981)…………………………………………5

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)....................................7, 16, 17, 18

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ..........................................16

In re *AutoZone, Inc.*, *Wage and Hour Employment Practices Litigation,* 289 F.R.D.

526 (N.D. Cal. 2012)...........................................................................................7

*In re Taco Bell Wage & Hour Actions*, 2012 WL 5932833 (E.D. Cal. Nov. 27, 2012) ...................8

*Kamar v. Radio Shack Corp.*, 254 F.R.D. 387 (C.D. Cal. 2008) ........................... 8, 14, 17

*Kurihara v. Best Buy Co., Inc.*, 2007 WL 2501698 (N.D. Cal. Aug. 30, 2007) ...........................4, 8

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978)............................................17

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) .........................................6, 8

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,

244 F.3d 1152, 1162 (9th Cir. 2001)……………………………………….……..7

*McCowen v. Trimac Transp. Servs. (Western)* , 311 F.R.D. 579, 588 (N.D. Cal. 2015)…………13

*Munoz v. Giumarra Vineyards Corp.*, 16 No. 09-0703, 2016 U.S. Dist. Lexis 63167 (E.D. Cal.

   May 12, 2016)…………………………………………………………………………………5

*Rannis v. Recchia*, 380 Fed. Appx. 646 (9th Cir. 2010) ........................................................6

*Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010)……………………………………..…7

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474 (E.D. Cal. 2006)…………………...7, 16

*Rutti v. Lojack Corp.*, No. SACV 06-350 DOC (JCx), 2012 U.S. Dist. LEXIS 107677

   (C.D. Cal. July 31, 2012)……………………………………………………………………18

*Sandoval v. M1 Auto Collisions Ctrs., Inc.*, No. 13-3230, 2016 U.S. Dist. Lexis

   156810 (N.D. Cal. Sept. 23, 2016)……………………………………………………………..5

*Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 322 (N.D. Cal. 2013)………………………....16

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016)…………………………………..19

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)........................................19

*Villalpando v. Exel Direct Inc.*, No. 12-cv-04137-JCS, 2016 U.S. Dist. LEXIS 53773,

   at *53 (N.D. Cal. Apr. 21, 2016)……………………………………………………...13, 19, 20

*Wal-Mart, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................................6, 7

*Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180 (N.D. Cal. 2009)…………………………..8

*Wolin v. Jaguar N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010)……………………………………5

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010)………………....……8

*Zinser v. Accufix Research Inst*, 253 F.3d 1180 (9th Cir. 2001) ........................................7

**STATE CASES**

*Augustus v. ABM Security Services, Inc.*  2 Cal.5th 257 (2016)…………………………..10, 15

*Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715 (2004)………………………..………………...19

*Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012) ........................ 9, 13, 14

*Cicairos v. Summit Logistics, Inc.* 133 Cal.App.4th 949 (2005)…………………………………...10

*Duran, Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1 (2014)…………………………..…20

*Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524 (2008)……………………………18

*Gentry v. Sup. Ct.*, 42 Cal. 4th 443 (2007)…………………………………………………………18

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

*Jaimez v. Daiohs USA, Inc.* 181 Cal.App.4th 1286 (2010)……………………………………10

*Murphy v. Kenneth Cole Productions, Inc.* 40 Cal.4th 1094 (2007)……………...…………..9, 10

*Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319 (Cal. 2004)…………………..5, 20

**STATUTES**

Cal. Lab. Code § 226.7......................................................................................... 8, 9, 10

Cal. Labor Code Section 512(a)……………………………………………………………….8

Fed. R. Civ. P. 23(a) ...............................................................................................5, 6

Fed. R. Civ. P. 23(a)(1) ..............................................................................................6

Fed. R. Civ. P. 23(a)(2) ..............................................................................................7

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 16, 17

Fed. R. Civ. P. 23(b) ...............................................................................................5, 7

Fed. R. Civ. P. 23(b)(3) ...................................................................5, 6, 7, 14, 17, 18

**OTHER AUTHORITIES**

IWC Wage Order 9-2001…………………………………….....................…………1, 9, 10, 15

**SECONDARY AUTHORITIES**

7A Charles Alan Wright, Arthur R. Miller, *et al.*, Federal Practice and Procedure, §

   1768 (3d ed. 1986) ..................................................................................17

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

By this Motion for Class Certification, Plaintiffs Tremaine Wilson and Lauren Becker ("Plaintiffs") seek to represent a Class of approximately 2,000 non-exempt, California-based Flight Attendants who have worked for Defendant SkyWest Airlines, Inc., ("Defendant" or "SkyWest") in California at any time since February 13, 2015, and who, as a result of SkyWest's uniform, illegal policies and practices, have been underpaid for meal and rest break premiums. Plaintiffs and the proposed class worked as Flight Attendants and were subjected to these violations as a result of Defendants' actions to circumvent state wage and hour requirements, as well as unreasonable meal and rest break policies that did not afford proper breaks.

As this Court is already well aware from the parties' previous summary judgment briefings, the relevant underlying facts are not in dispute. Specifically, SkyWest does not dispute that it, as a matter of common policy and practice, required all Flight Attendants to remain on-duty without meal and rest breaks during flight operations. Similarly, SkyWest also concedes, again, as a matter of common policy and practice, that it regularly required Flight Attendants to forego taking any breaks in between flight legs where SkyWest's flight schedules failed to permit adequate time to do so. These policies collectively required all SkyWest Flight Attendants, including the members of the proposed class herein, to regularly work without receiving the rest or meal periods statutorily required under California law. Moreover, SkyWest enforced these work requirements without obtaining on-duty meal period agreements from any of the class members, seeking an exemption from California rest break requirements pursuant to IWC Wage Order 9-2001, or paying any of its California-based Flight Attendants an hour of premium wage payments for missed meal or rest periods.

Thus, the claims herein are particularly ripe for adjudication on a class-wide basis. As this Court is also aware, claims identical to those brought ere have, not only been previously certified, but successfully litigated to class-wide resolution in this District in the matter of *Bernstein v. Virgin America, Inc.,* United States District Court of Northern California Case No. 3:15-cv-02277. Moreover, this Court has already analyzed the challenged policies herein and their effect on SkyWest's California Flight Attendants and issued liability findings based thereon. *See*, Order Granting in Part and Denying

in Part Plaintiffs' Partial Motion for Summary Judgment, ECF. No. 93.While that Order was procedurally limited to the named Plaintiffs, those findings were based on Defendant's common policies, operations and defenses. Thus, any further litigation required to expand those findings to the class as whole will be more, as the Court described at the parties' most recent Case Management Conference, a matter of "formality" versus genuine material dispute.

Accordingly, Plaintiffs respectfully request that the Court grant their Motion for Class Certification in its entirety.

## II.  STATEMENT OF FACTS

### A.      The Parties

SkyWest operates Flight routes for four major airline carriers, American, Alaska, Delta and United. (Declaration of Matthew Bainer ["Bainer Decl."], Ex. A Deposition transcript of Steven Spagnolo, SkyWest's 30(b)(6) Representative ["Spagnolo Depo.Trans."], p. 27:20-23).[1] SkyWest is the largest regional sub-carrier in the United States. (*See*, ECF No. 82-13, Expert Report of Darin N. Lee, previously filed in Support of Defendants Motion for Summary Judgment ["Lee Report."], p. 12] In California, SkyWest operates out of five Bases of Operations, located in Fresno, Los Angeles, Palm Springs, San Diego and San Francisco. *Id.* SkyWest operates approximately 2,400 daily flight routes on behalf of its primary air carriers, on a fleet of 503 aircraft. (ECF No. 82-13, Lee Report, p. 13)

Plaintiffs Lauren Becker and Tremaine Wilson were both hired as Flight Attendants for Skywest Airlines in September and October of 2017, respectively. (Ex. B, Deposition transcript of Tremaine Wilson ["Wilson Depo. Trans."], p. 35:13-17; Ex. C, Deposition transcript of Lauren Becker ["Becker Depo. Trans."] p. 22:4-6). Both Plaintiffs were assigned to San Francisco as their base of Operations. (Ex. B, Wilson Depo. Trans. p. 37:14-17]; Ex. C, Becker Depo. Trans., p. 52: 16-21).

### B.      Flight Attendants' Standardized Training Program

Upon hire, and prior to commencing any in-flight work duties, all SkyWest Flight Attendants

---

[1] All subsequent citations to exhibits shall refer to exhibits attached to the Declaration of Matthew Bainer in Support of Plaintiffs' Motion for Class Certification, filed concurrently herewith, unless specifically indicated otherwise.

travel to the company's campus in Utah for their training. (Ex. A, Spagnolo Depo. Trans., p. 37:2-17; Ex. C, Becker Depo. Trans., p. 48:6-17; Ex. B, Wilson Depo. Trans. p. 42:9-16) This intensive training program involves instruction periods lasting up to 10 hours per day for a period of four consecutive weeks. (Ex. A, Spagnolo Depo. Trans., p. 10:16-20, 11:2-5; Ex. C, Becker Depo. Trans., p. 48:6-17; 52:22-25). As part of this training program, Flight Attendants are trained on 39 standardized manuals, (Ex. A, Spagnolo Depo. Trans. p. 45:7-46:3) including SkyWest's InFlight Operations Manual (*Id.* at p. 40:13-25) and the Flight Attendant Policy Manual (*Id.* at p. 43:24-44:4). Flight Attendants "go through each of the manuals to get specifics, but this is where they're training on the different manuals, the different processes, the safety, all the compliance items that they need." (*Id.* at p. 38:3-7) Flight Attendant Trainees also use flight simulators to simulate the work experience of a SkyWest Flight Attendant. (Ex. C, Becker Depo. Trans., p. 49:17-23) SkyWest uses a standardized set of curriculum and criteria to ensure that "all of the new-hire flight attendants are trained on the same topics during that training process" (Ex. A, Spagnolo Depo. Trans., p. 38:16-18) This is important to the company to ensure that "the student … understand SkyWest Airlines' policies, procedures, and means of compliance with the Federal Aviation Regulations while engaged in the business of air commerce." (Ex. C, Becker Depo Trans. p. 59:19-60:8)

After completing the four-week training program, Flight Attendants receive further on the job in-flight training so SkyWest can "make sure they're applying what they learned during their ground training, following all the compliance rules." (Ex. A, Spagnolo Depo. Trans. p. 46:20-22)

### C.      SkyWest's Nationwide Flight Operations

The routes flown by Flight Attendants are provided to SkyWest by its client air carriers on a national basis and then grouped into flight "pairings", to be assigned to Flight Attendants, by SkyWest's centralized Crew Planning Department (Ex. A, Spagnolo Depo. Trans., p. 27:10-17; 28:2-4). SkyWest's Crew Planning Department then distributes those pairings for bidding by the Flight Attendants. (*Id.* at p. 28:5-10; Ex. C, Becker Depo. Trans., p. 105:19-106:11) SkyWest Flight Attendants' "pairing details" for their flights clearly record their "Report" time (the time they commence their work shift) and their "Release" time at the end of the day (the time they complete their

duties and are released). (Ex. A, Spagnolo Depo. Trans., p. 110:3-11) These records also record the time each flight leg flown by a Flight Attendant departs and arrives during their assigned duty day. (Ex. C, Becker Depo. Trans., p. 119:18-120:10, 126:4-128:1)

Flight Attendants are paid according to a standardized pay formula, which is calculated and double checked by SkyWest's centralized In-Crew Pay Administration department after the Flight Attendant's flown routes. (Ex. A, Spagnolo Depo. Trans., p. 30:10-31:12)

### D.  Flight Attendant's Uniform Duties

Flight Attendants are provided electronic access to all SkyWest's standardized policy and operation manuals to reference and use during the performance of their job duties. (Ex. C, Becker Depo. Trans., p. 77:13-78:16) Flight Attendants are required to check in for all scheduled flight legs at the respective gate at least 35 minutes prior to the scheduled departure time. (Ex. A, Spagnolo Depo. Trans., p. 68:20-69:1) Prior to flights, Flight Attendants are responsible for performing preflight checks and duties and communicating to the gate agent when the plane is prepared to begin boarding. (*Id.* at p. 72:13-20; Ex. C, Becker Depo. Trans., p. 144:5-13; Ex. B, Wilson Depo. Trans., p. 103:10-19) During flight, Flight Attendant's primary duties include providing customer service to passengers, performing safety duties, onboard passengers before takeoff, and performing required cabin duties during flight, all "in compliance with SkyWest Airline's company crew policy and federal regulations." (Ex. A, Spagnolo Depo. Trans., p. 42:4-19; Ex. C, Becker Depo. Trans. p. 69:15-70:18) Lastly, after passengers exit a flight leg the Flight Attendants are responsible for cleaning the plane cabin and preparing the plane for its next flight leg. (Ex. B, Wilson Depo. Trans., p. 121:1-122:1)

### E.  SkyWest's Policies Prohibiting Off-Duty Breaks

SkyWest does not provide Flight Attendants an opportunity to take a meal or rest break during flight but, rather to remain on-duty during the entirety of the flight. (Ex. A, Spagnolo Depo. Trans., p. 74:10-24; ECF No. 82-13, Lee Report, p. 49; Ex. C, Becker Depo. Trans., p. 157:23-158:20; Ex. D, Wilson Depo. Trans., p. 54:22-55:3) Similarly, as a result of SkyWest's flight schedules and/or unexpected interruptions, Flight Attendants often do not have sufficient time to take a break, or even

1  exit their aircraft, in between their assigned flight legs. (Ex. A, Spagnolo Depo. Trans., p. 77:7-79:9

2  ECF No. 82-13, Lee Report, p. 50 fn. 90; p. 55). SkyWest acknowledges that these common policies

3  and procedures will require Flight Attendants to forego off-duty breaks during some of their shifts. (Ex.

4  A, Spagnolo Depo. Trans., p. 116:6-10) SkyWest does not obtain written on-duty meal period

5  agreements from any of its Flight Attendants prior to having them commence work duties requiring on-

6  duty meal or rest periods. (*Id.* at 115:25-116:4)

7

8  III. **ARGUMENT**

9       **A.**    **The Standard For Class Certification**

10       Both U.S. and California Supreme Courts recognize that class actions promote civil justice and

11  employee rights. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) ("[c]lass actions serve an

12  important function in our system of civil justice.") *Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal.

13  4th 319, 340 (Cal. 2004) ("[California] has a public policy which encourages the use of the class action

14  device.") (internal quotation omitted).   Consistent with this principle, courts liberally grant class

15  certification.  *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985), cert. denied sub nom.,

16  *Wasserstrom v. Eisenberg*, 474 U.S. 946 (1985) (citations omitted) (in a "doubtful case…any error, if

17  there is to be one, should be committed in favor of allowing a class action.") *Sandoval v. M1 Auto*

18  *Collisions Ctrs., Inc.*, No. 13-3230, 2016 U.S. Dist. Lexis 156810 (N.D. Cal. Sept. 23, 2016) ("any

19  'doubts regarding the propriety of class certification should be resolved in favor of certification.'");

20  *Munoz v. Giumarra Vineyards Corp.*, 16 No. 09-0703, 2016 U.S. Dist. Lexis 63167 (E.D. Cal. May

21  12, 2016) (same).

22       Class certification is proper if Plaintiffs satisfy the requirements of Federal Rule of Civil

23  Procedure 23(a)—numerosity, commonality of facts or law, typicality, and adequacy of

24  representation—and one subsection of Rule 23(b). *Wolin v. Jaguar N. Am., LLC*, 617 F.3d 1168, 1172

25  (9th Cir. 2010). Because Plaintiffs seek certification pursuant to Rule 23(b)(3), they must show that

26  "the questions of law or fact common to the members of the class predominate over any questions

27  affecting only individual members, and that a class action is superior to other available methods for the

28  fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

1    The Court's "class certification analysis must be rigorous and may entail some overlap with the

2    merits of the plaintiff's underlying claim." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S.Ct.

3    1184, 1194 (2013) (quoting *Wal-Mart, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal quotation

4    marks omitted)). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries

5    at the certification stage." Id. at 1194-95. "Merits questions may be considered to the extent—but only

6    to the extent—that they are relevant to determining whether Rule 23 prerequisites for class certification

7    are satisfied." *Id.*

8    Moreover, "it is the plaintiff's theory that matters at the class certification stage, not whether

9    the theory will ultimately succeed on the merits." *Alonzo v. Maximus, Inc*., 275 F.R.D. 513, 525 (C.D.

10   Cal. 2011) (citations omitted); *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 443 (C.D. Cal. 2014).

11   Indeed, the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes* repeatedly stated that Rule 23's

12   commonality analysis depends on whether plaintiffs' "basic theory of their case" as to Wal-Mart's

13   alleged policy and practice of discriminatory treatment of women "can be proved on a classwide

14   basis." *Wal-Mart*, 131 S. Ct. at 2548, 2554-55.  Importantly, the fact that class members may have

15   been affected differently or to varying degrees by Defendant's uniform policies and practices *is not a*

16   *bar* to certification.  *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)  ("the presence of

17   individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).")

18

19            **B.      The Class Is Ascertainable and Its Members Sufficiently Numerous**

20   Class certification is proper if the class is adequately defined and ascertainable.  *See* Fed. R.

21   Civ. P. 23(a)(1).  Here, class members are easily identifiable as the definitions thereof is clear and

22   objective, and class members may be readily ascertained from SkyWest's own records. Indeed,

23   SkyWest has already ascertained the identity of the proposed class members and provided Plaintiffs

24   with names and contact information of those class members.  (Ex. D, Defendant's Amended Responses

25   to Plaintiff's Request for Supplemental Responses to Special Interrogatories, Response #2)

26   The class and each of the subclasses is also sufficiently numerous. To satisfy Rule 23(a)'s

27   "numerosity" requirement, "a proposed class must be 'so numerous that joinder of all members is

28   impracticable.'" *Rannis v. Recchia*, 380 Fed. Appx. 646, 650-51 (9th Cir. 2010) (quoting Fed. R. Civ.

P. 23(a) (affirming certification of a class of 20).)  Here there are, as of the submission of Defendant's

most recent Amended Responses to Supplemental Special Interrogatories, 1967 putative class

members.  (Ex. D, Defendant's Amended Responses to Plaintiff's Request for Supplemental

Responses to Special Interrogatories, Response #1) Therefore, the numerosity requirement is readily

satisfied.

### C.    Common Questions Of Law Or Fact Predominate Plaintiffs' Theories

For a class to be certified, there must be questions of law or fact common to the class.  Fed. R.

Civ. P. 23(a)(2).  Additionally, A party seeking to certify a class must also demonstrate that it has met

at least one of the requirements of Rule 23(b)—in this case, Rule 23(b)(3).  *See Zinser v. Accufix*

*Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Thus, the Rule 23(a)(2) commonality inquiry and

the Rule 23(b)(3) predominance inquiry overlap as those common questions of law or fact must

predominate over any individual questions .  *AutoZone*, 289 F.R.D. 526, 533 (N.D. Cal 2012).

### 1.    The Standards for Commonality and Predominance

Class members' claims need not be identical; they must only share common questions such

that "a classwide proceeding [can] generate common answers apt to drive the resolution of the

litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 at 2551 (emphasis in original, citation omitted); accord

*Abdullah*, 731 F.3d at 957 (common answers generated must be "apt to drive the resolution" of class

claims). "All questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler*

*Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Instead, either "shared legal issues or a common core of

facts" suffices. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010); *Wal–Mart*, 131 S.Ct. at 2556

("even a single [common] question will do.")

The Ninth Circuit repeatedly has held that "[w]hen common questions present a significant

aspect of the case and they can be resolved for all members of the class in a single adjudication, there is

clear justification for handling the dispute on a representative rather than on an individual basis." *Local*

*Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th

Cir. 2001) (quoting Hanlon, 150 F.3d at 1022). "The Rule 23(b)(3) predominance inquiry tests whether

proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). There is no bright line test for this determination. Instead, "the Court must pragmatically assess the entire action and the issues involved." *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 489 (E.D. Cal. 2006) (citation omitted). Individual questions regarding damages will not adversely affect Plaintiffs' ability to demonstrate predominance. *See Leyva v. Medline Industries, Inc.*, 716 F.3d at 514; *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("in this circuit [] damages calculations alone cannot defeat certification"). For many of the same reasons discussed regarding commonality, common questions predominate over any individualized inquiries that may arise. "Class certification is usually appropriate where liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008); *see* also *Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 204 (N.D. Cal. 2009); *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550, 564 (S.D. Cal. 2013).

When workplace violations are at issue, "the key question for class certification is whether there is a consistent employer practice [or policy] that could be a basis for consistent liability." *Kamar v. Radio Shack Corp.*, 254 F.R.D. at 399. Indeed, class certification is proper when the plaintiff provides substantial evidence of a company-wide policy on which her theory of liability is based, even if in practice that policy's implementation varied. *See In re Taco Bell Wage & Hour Actions*, 2012 U.S. Dist. LEXIS 168219, at *19 (E.D. Cal. 2012) (certifying meal period class where uniform policy was undisputed but defendant argued "as a matter of practice, the policy is carried out in a variety of ways") (*aff'd de novo*, 2013 U.S. Dist. LEXIS 380 (E.D. Cal. 2013); *Kurihara v. Best Buy Co., Inc.*, 2007 U.S. Dist. LEXIS 64224, at *28-*30 (N.D. Cal. 2007) ("Where a plaintiff challenges a well-established company policy, a defendant cannot cite poor management to defend against class certification.").

## 2.   Plaintiffs' Meal and Rest Period Claims

Plaintiffs' primary claims are that SkyWest unlawfully denied the class members statutorily-mandated meal and rest breaks and failed to pay them the required one-hour premium wage payment they were owed as a

result. As to meal periods, California Labor Code Section 226.7(a) states that "[a]n employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute… or order of the Industrial Welfare Commission." The companion statute at Labor Code Section 512(a) specifies that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes", however, "the Industrial Welfare Commission may adopt a working condition order permitting a meal period to commence after six hours of work if the commission determines that the order is consistent with the health and welfare of the affected employees." The Industrial Welfare Commission has specifically created an exception for members of the transportation industry. IWC Wage Order 9-2001 allows transportation employers to require their employees to forego 30 minute meal periods where a "written agreement between the parties an on-the-job paid meal period is agreed to" prior to the employee commencing work requiring an on-duty meal period. If neither the off-duty meal period is provided, nor a written agreement to remain on-duty is executed, statutory compliance requires the employer to pay "one additional hour of pay at the employee's regular rate of compensation" for each missed meal period.  California Labor Code § 226.7(b*).* The employer's burden under California law is to "relieve[] its employees of all duty, relinquish[] control over their activities and permit[] them a reasonable opportunity to take an uninterrupted 30-minute break,  and … not impede or discourage them from doing so." *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1040.

Employers have multiple means of complying with California's meal period requirements. First, and most obviously, it can simply provide the required meal period. Alternatively, IWC Wage Order 9-2001 allows transportation employers and employees to execute on-duty meal period agreements where, and *only* where, "the nature of the work prevents an employee from being relieved of all duty." Thus, these agreements can only be used in situations where it is not possible to perform the basic functions of the job while also taking a statutorily required meal period, such as SkyWest claims is the case with its Flight Attendants.

Lastly, the employer may simply pay the imposed premium wage payments.  In *Murphy v. Kenneth Cole Prods., Inc.*, the California Supreme Court established that the meal and rest break premium pay provisions are wage requirements, designed to promote employee health and safety by incentivizing employers to provide meal and rest breaks to their employees. *Murphy v. Kenneth Cole Productions, Inc.*  40 Cal.4th 1094, 1111 (2007). As construed by the California Supreme Court, meal and rest period premium pay are wages intended to

1  influence employer behavior in a manner analogous to overtime pay:

2       As has been recognized, in providing for overtime pay, the Legislature simultaneously created a

3  premium pay to compensate employees for working in excess of eight hours while also creating a device 'for

4  enforcing limitation on the maximum number of hours of work ..., to wit, it is a maximum hour enforcement

5  device....' Indeed … courts have often referred to overtime wages as 'premium or penalty pay.' Describing

6  overtime pay as both a 'penalty' and as 'premium pay' acknowledges that, while its central purpose is to

7  compensate employees for their time, it also serves a secondary function of shaping employer conduct. *Murphy*

8  *v. Kenneth Cole Productions, Inc.*,  40 Cal.4th at 1109 (internal citations and quotations omitted).

9       Subsequently, in *Augustus v. ABM Security Services*, the California Supreme Court directly addressed

10  whether payment of the premium wage was, in fact, a legal means of compliance with California's meal and rest

11  period requirements. The Court held that employers who find it "especially burdensome" to provide rest periods

12  have "[s]everal options," including the option of simply "pay[ing] the premium pay" specified in the statutes.

13  *Augustus v. ABM Security Services, Inc.*  2 Cal.5th 257, 272 (2016)

14       As to rest periods, Section 226.7 provides that "[a]n employer shall not require an employee to work

15  during a … rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard,

16  or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the

17  Division of Occupational Safety and Health." Under the applicable IWC wage order, an employer is required to

18  "authorize and permit all employees to take rest periods" at the rate of at least 10 minutes for every four hours

19  worked, or major fraction thereof. IWC Wage Order 9-2001 §12(A). California Labor Code § 226.7(b) further

20  requires an employer to pay "one additional hour of pay at the employee's regular rate of compensation for each

21  work day that the meal or rest period is not provided."

22       The California Supreme Court has clearly stated that requiring on-call status during a rest break does not

23  comply with California's statutory requirements that these breaks be duty-free.  *Augustus,* 2 Cal. 5th at 270

24  ("Given the practical realities of rest periods, an employer cannot satisfy its obligations under Wage Order 4,

25  subdivision 12(A) while requiring that employees remain on call.") Scheduling work duties in a manner that does

26  not afford sufficient time in between to take a compliant rest period has also been found sufficient for purposes of

27  finding a rest break violation. *See* e.g. *Cicairos v. Summit Logistics, Inc.* 133 Cal.App.4th 949, 962-963 (2005)

28  (holding defendant liable for rest break violations where route did not include time for rest breaks, culture

discouraged breaks); *Jaimez v. Daiohs USA, Inc.* 181 Cal.App.4th 1286, 1304-1305 (2010) (finding employer failed to satisfy rest break requirements where class members delivery schedules made it difficult to complete deliveries and take all rest breaks); *Dilts v. Penske Logistics, LLC* 267 F.R.D. 625, 638 (S.D. Cal. 2010) (an informal anti-break policy was enforced through ridicule and reprimand).

There is no dispute that SkyWest's California-based Flight Attendants were repeatedly prevented from taking off-duty 30-minute meal periods or 10-minute rest periods. First, it is SkyWest's unwavering policy that Flight Attendants must remain on duty *at all times* during flight operations. During her deposition, Plaintiff Lauren Becker was asked whether, during flight, she could have taken a period to "not respond[] to passengers, not respond[] to the captain, but use that time to maybe look through your phone, maybe read a book, talk to -- casually, socially to -- well, you'd be the sole flight attendant, so there wouldn't be anybody to talk to, but do you think you could do anything you wanted within reason" to which Ms. Becker confirmed "°it's not allowed, so I don't think it would have been possible to do that. No, I don't." (Ex C, Becker Depo. Trans., p. 157:23-158:20) Plaintiff Wilson also confirmed that Flight Attendants were not permitted to take in-flight breaks because "there was something for [them] to do at all times" and that, even while "sitting in the jump seat after a service was completed, [she] … still ha[d] to be alert to passenger call buttons or calls from the flight deck." (Ex B, Wilson Depo. Trans., p. 143:9-23). During flight operations SkyWest policy does not permit Flight Attendants to ever "not be alert and responsive to passengers" or "not be alert to the flight crew". (Ex B, Wilson Depo. Trans., p. 144:17-25). Accordingly, as a result of these ongoing in-flight required job duties SkyWest Flight Attendants "cannot take a completely duty-free rest or meal period." (Ex B, Wilson Depo. Trans., p. 145:3-23)

When questioned about SkyWest's meal and rest policies, SkyWest's Corporate Representative confirmed that it is SkyWest's common policy and practice to prohibit Flight Attendants from taking off-duty breaks during flight. Mr. Spagnolo testified as follows:

> 10   Q  Is there any availability for a flight
> 11  attendant to take ten minutes during the flight where
> 12  they would refuse to perform any of those
> 13  responsibilities?
> 14   A  No, I don't think that during flight they can
> 15  take any time where they are completely not responsible
> 16  for safety or their duties.
> 17   Q  Because some of those responsibilities involve
> 18  monitoring the cabin to see if something does happen;

19   correct?
20    A   Correct.
21      Q   And some of those responsibilities would
22   involve being available to respond to the cabin if
23   someone were to call out with some sort of situation?
24    A   Correct.

(Ex. A, Spagnolo Depo. Trans., p. 74:10-24). Similarly, Dr. Darin Lee's expert analysis of SkyWest's policies

and operations led to the same conclusion regarding SkyWest's in-flight rest and meal period prohibition. Dr.

Lee found that FAA regulations, as they were (albeit incorrectly) understood by SkyWest, "dictate that the flight

attendant be available to immediately perform a host of important federally-regulated safety duties if and when

the need arises. Thus, SkyWest (or any carrier for that matter) cannot guarantee that its flight crew will receive an

uninterrupted, 'duty-free' (from California's perspective) meal or rest break while working onboard an aircraft."

(ECF No. 82-13, Lee Report, p. 49)

Similarly, in between flight legs, Flight Attendants have mandatory work requirements which regularly

fail to afford them sufficient time to take a duty-free meal or rest period. Ms. Wilson described the process during

her deposition:

·1· · · · · ·And so on this first flight from SFO to
·2· ·Phoenix it looks like there was 4 -- there were 42
·3· ·minutes in between that and your next flight out of
·4· ·Phoenix.· What sort of things would you typically do
·5· ·during that period?
·6· · · · A· · Clean the plane, deplane, double-check to
·7· ·make sure that the lav or bathroom is not -- the
·8· ·actual toilets aren't filled, prep food.

(Ex B, Wilson Depo. Trans., p. 121:1-8) Again, SkyWest's Representative confirmed this is SkyWest's

common policy and expectation for its Flight Attendants. During his deposition, Mr. Spagnolo confirmed that

there are some instances where a flight attendant would, by virtue of the flight schedules, "be required to remain

on the plane they landed on before that plane takes off again", prohibiting a break of any length, let alone a full

statutorily compliant meal or rest period. (Ex. A, Spagnolo Depo. Trans., p. 75:23-76:1). Specifically, Mr.

Spagnolo testified:

20· · · · Q· · There is a requirement that they be at the

21· ·plane a certain amount of time before the scheduled
22· ·departure time; correct?
23· · · · A· · Correct.
24· · · · Q· · So if there wasn't time to leave the plane and
25· ·get back before that point, would you agree they'd be
·1· ·functionally prohibited from leaving the plane?
·2· · · · A· · Can you tell me what you mean by "functionally
·3· ·prohibited"?
·4· · · · Q· · It would not be possible for them to do so and
·5· ·continue to comply with their duties to --
·6· · · · A· · I think that assumption would be correct, yes.

(*Id.* at p. 79:20-80:6) Once again, Dr. Lee's expert analysis confirmed that SkyWest's flight schedules did, in fact, have occasion to prevent Flight Attendants from taking statutorily-compliant break periods in between their scheduled flights, finding that "the *median* amount of time between flights within a duty period was 56 minutes, which considering that flight attendants are not 'released' from the landing flight for up to 15 minutes after blocking in, and are expected to be at the gate for the next flight 35 minutes before scheduled departure, would generally not allow sufficient time for a 30 minute, 'duty-free' (from California's perspective) meal period at the airport."[2] (ECF No. 82-13, Lee Report, p. 50 fn. 90; p. 55)

### 3.    Plaintiffs' Claims are Susceptible to Common Proof

SkyWest's policies apply to the class as a whole, making the question of its liability a common one that will predominate over any individualized issues. "Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." *Brinker*, 53 Cal.4th at 1033 (finding certification of meal and rest breaks classes appropriate under California law); see *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 967 (9th Cir. 2013) (affirming certification of meal break class where uniform evidence that class members were not relieved of duty); *Villalpando v. Exel Direct Inc.*, No. 12-cv-04137-JCS, 2016 U.S. Dist. LEXIS 53773, at *53 (N.D. Cal. Apr. 21, 2016) ("the Court concludes that Plaintiffs' are entitled to proceed on their meal and rest break claims on a class-wide basis . . . [as] their theory of liability is based on common policies that make it difficult or impossible for class members to take breaks); *McCowen v. Trimac Transp. Servs. (Western)* , 311 F.R.D. 579, 588 (N.D. Cal.

---

[2] While not specifically addressed in this conclusion, the 15-minute release period added to the 35 minute reporting period (50 minutes total) would also obviously not allow a duty free 10 minute rest period during the 56 minute median turnover time.

2015) (noting that "courts routinely certify classes and find predominance" where there is an alleged failure to comply with wage order obligations to "'record' unpaid meal periods."); *Dilts*, 267 F.R.D. at 640 (granting class certification of breaks claims).

Indeed, as one court noted:

After *Brinker*, common questions will often predominate with regard to meal and rest break claims. These common questions include: did the employer have a policy or practice to "relieve[] its employees of all duty?" Did the employer have a policy or practice to "relinquish[] control over [employee] activities?" Did the employer have a policy or practice to "permit [employees] a reasonable opportunity to take an uninterrupted 30- minute break?" A negative answer to any of these questions would mean that the employer failed to meet its affirmative obligation to provide—but not police—meal periods and rest breaks.

*Boyd*, 300 F.R.D. at 441 (internal citations omitted). Plaintiffs' meal and rest claims satisfy predominance because they "will prevail or fail in unison," as required by Rule 23(b)(3). *See Amgen Inc.*, 133 S. Ct. at 1191.

Of course, the most recent and directly on point case is that of *Bernstein v. Virgin*. In *Bernstein*, the District Court certified a virtually identical class, based on nearly identical common policies and procedures, to pursue the same meal and rest break claims pursued herein. In so doing, the District Court first observed that:

"Class certification is usually appropriate where liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008), *aff'd sub nom. Kamar v. RadioShack Corp.*, 375 F. App'x 734 (9th Cir. 2010); *see also, e.g., Amey v. Cinemark USA Inc.*, No. 13-CV-05669-WHO, 2015 WL 2251504, at *6 (N.D. Cal. May 13, 2015)("[T]he predominance requirement of Rule 23(b)(3) is generally satisfied if a party can show that an employer used a standard policy that was uniformly implemented."). This makes sense because "[s]uch centralized rules, to the extent they reflect the realities of the workplace, suggest a uniformity among employees that is susceptible to common proof." *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (noting that "courts have long found that comprehensive uniform policies detailing the job duties and responsibilities of employees carry great weight for certification purposes"). For that reason, "[c]laims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1033 (2012).

*Bernstein v. Virgin Am., Inc.* No. 15-cv-02277-JST 2016 U.S.Dist.LEXIS 154326, at 40 (N.D. Cal. 2016). The District Court noted that, Virgin's policies undisputedly "require flight attendants to remain on-duty from an hour before the flight until fifteen minutes after the last flight of a pairing, including time between flights." *Bernstein*, 2016 U.S.Dist.LEXIS 154326 at 42. Further, as here, during the defendant's Corporate Representative's deposition, the defendant "admitted that its policies did not afford class members an opportunity to take an off-

duty break on every shift such a break was mandated under California law." *Id.* at 42-43. The District Court then concluded that "[t]he legality of this uniform, on-duty break policy is therefore a common question that will be answered through common proof. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1033–34 (2012) ( "The theory of liability – that *Brinker* has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law – is by its nature a common question eminently suited for class treatment."). *Id.* at 43. The District Court's decision to grant class certification was subsequently affirmed by the Ninth Circuit on appeal. *Bernstein v. Virgin Am., Inc.* 3 F.4th 1127, 1144 (9th Cir. 2021).

This Court's own analysis and findings on Plaintiffs' Motion for Summary Adjudication demonstrates the commonality of the issues to be determined in this case. In response to Defendant's primary defense herein, that of preemption, the Court rejected that defense given that "SkyWest has not shown that applying California's meal and rest requirements or wage statement laws to its California-based flight attendants imposes the kind of burden that implicates the dormant Commerce Clause." ECF No. 93 p. 2. The Court noted that this was so because "[a]pplying California's meal and rest break laws to SkyWest's California-based flight attendants does not undermine the smooth operation of interstate commerce." *Id.* at p. 2-3 The Court further observed that:

> Moreover, any burden imposed on SkyWest is greatly alleviated by the options available to it for complying with the meal and rest break requirements. With respect to rest breaks, California law expressly permits employers to seek exemptions from the rest break requirements if compliance "would not materially affect the welfare or comfort of employees and would work an undue hardship on the employer." IWC Wage Order 9-2001 § 17; *see also Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269 n.12 (2016). Flight attendants seem like the prime example of employees who would qualify for such an exemption. Strict compliance would not seem to materially affect the flight attendants' comfort, given that they have opportunities to sit and rest while onboard. And providing duty-free rest breaks in the middle of a flight would likely create an undue hardship because, as required by federal regulations and as needed to ensure passenger safety, flight attendants must remain alert and vigilant while a plane is in the air.
> As to meal breaks, California law allows for "on-duty" meal periods if "the nature of the work prevents an employee from being relieved of all duty" and the parties agree to an on-duty meal break "by written agreement." IWC Wage Order 9-2001 § 11(C). For the reasons just given, the nature of flight attendants' work seems precisely the kind that prevents them from being relieved of all duties while taking meal breaks.

*Id.* at 3. It is unmistakable that this analysis was based *not* on facts and issues individualized to the named Plaintiffs but, rather, rested on analysis of the policies and procedures inarguably common to all members of the putative class herein and to Defendant's uniform defense of exemption based on the nature of its international

1   business operations. The Court further noted that the remaining facts and legal issues underlying the liability

2   where not in dispute as "SkyWest does not contend that it complied with California's meal and rest break

3   requirements, and the plaintiffs have submitted evidence that they were neither given the required breaks nor

4   compensated with additional pay." *Id.* at 4.

5            Accordingly, the certification of this class presents merely a procedural hurdle to allow this Court to

6   apply those same findings to the class as a whole, based on the analysis and findings already made in its previous

7   Summary Judgment Order.

8

9            **D.**       **Plaintiffs Claims Are Typical of The Class**

10            The purpose of the typicality requirement is to assure that the interest of the named

11   representative aligns with the interests of the class. Typicality refers to the nature of the claim or

12   defense of the class representative, and not to the specific facts from which it arose or the relief

13   sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

14   Representative claims are typical of the class "if they are reasonably co-extensive with those of absent

15   class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

16            As was previously briefed to this Court during the summary judgment stage, both Plaintiffs

17   held the same position, performed the same duties, and were subjected to the same work rules and

18   break prohibitions as all other members of the Class. Plaintiffs' claims are typical of the claims of the

19   Class because they all arise out of SkyWest's uniform conduct toward its California-based Flight

20   Attendants. *See e.g., Romero,,* 235 F.R.D. at 489 (typicality satisfied where plaintiffs seek relief "based

21   on the same conduct of Defendant: the failure to pay overtime wages [and] Defendant does not contend

22   that the Named Plaintiffs' claims arise from conduct that Defendant directed at them alone"); *Tijero v.*

23   *Aaron Bros., Inc.*, 301 F.R.D. 314, 322 (N.D. Cal. 2013) (typicality satisfied where Plaintiffs and other

24   employees were subject to the same pay policies and practices).

25            Plaintiffs' claims arise from the same facts and same legal theories as the proposed Class and

26   are, therefore, typical.

27

28

**E.** **Plaintiffs and Counsel Will Adequately Represent The Class**

Rule 23(a)(4) requires that the proposed class representatives and their counsel be adequate. Adequacy has two elements: (1) that the proposed representatives do not have conflicts of interest with the proposed Class, and (2) that Plaintiffs are represented by qualified and competent counsel. See, e.g., *Hanlon*, 150 F.3d at 1020. "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." 7A Charles Alan Wright, Arthur R. Miller, *et al.*, Federal Practice and Procedure, § 1768 (3d ed. 1986).

Both elements of the adequacy requirement are satisfied here. *First*, neither Plaintiff has any interest that is antagonistic to the interests of the proposed Class. Both Plaintiffs have served as California-based Flight Attendants in California like every other member of the proposed Class. Both Plaintiffs have represented their former co-workers with a focus and zeal true to the fiduciary obligation that they have undertaken, including reviewing and revising written discovery, providing deposition and declaration testimony on behalf of the Class, and working closely with their attorneys throughout the case.

Likewise, The Bainer Law Firm satisfies the Rule 23(a)(4) adequacy-of-counsel requirement. (*See* Bainer Decl. ¶¶ 6-7.)  Plaintiffs' Counsel is well qualified to represent the class. specializes in wage and hour litigation, and has vigorously litigated this case. Plaintiffs and proposed Class Counsel will, therefore, adequately represent the Class.

**F.** **Class Treatment Is Superior To A Multitude Of Individual Lawsuits Because Plaintiffs' Claims May Be Adjudicated On Common Proof**

Plaintiffs must demonstrate that "a class action is superior to other available methods."  Fed. R. Civ. P. 23(b)(3).  "Employer practices and policies with regard to wages and hours often have an impact on large numbers of workers in ways that are sufficiently similar to make class-based resolution appropriate and efficient." *Kamar*, 254 F.R.D. at 406; *Lerwill v. Inflight Motion Pictures*, 582 F.2d 507, 512-13 (9th Cir. 1978) (affirming certification of class of technicians seeking overtime pay and finding that "[n]umerous individual actions would be expensive and time-consuming").

Class treatment is superior "whenever the actual interests of the parties can be served best by

settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (quotation omitted); *see Valentino*, 97 F.3d 1227, 1234 (9th Cir. 1996) (superiority satisfied where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency"). In evaluating superiority, courts consider: (a) the class members' interests in individually controlling the prosecution of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). All the factors strongly favor class certification.

### 1. Class Treatment Is the Most Efficient and Beneficial Structure to Resolve this Dispute

Here, class-wide treatment is superior. There are no other cases by proposed Class members against SkyWest regarding the claims in this case. There is also no indication that Class members have an interest in individually controlling the prosecution of this action. And, as detailed above, the factual foundation of the claims is SkyWest's uniform policies and procedures which present a model case for treatment as a class action. In addition, the opt-out nature of a (b)(3) class protects the interests of Class members who do not wish to participate. Certification here, therefore, provides a single forum to protect the rights of SkyWest's workers. *See, e.g., Romero*, 235 F.R.D. at 491 (class treatment superior when no indication that individual members desire to individually control their case, no parallel litigation, and resolution of a common issue may resolve case).

Moreover, in cases involving employment matters like the ones at issue here, the alternative to a class case is often no case at all. "[C]ourts have consistently recognized that the 'fear of economic retaliation' will force workers 'quietly to accept substandard conditions,' dissuading employees from participating in lawsuits against their employers." *Rutti v. Lojack Corp.*, No. SACV 06-350 DOC (JCx), 2012 U.S. Dist. LEXIS 107677, at *17 (C.D. Cal. July 31, 2012) (citation omitted). In addition, in cases involving claims like those at issue here, the individual damages are often too small to merit individual actions. *Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524, 1538 (2008) (requiring workers to prosecute individual claims would jeopardize their ability to find competent representation).

The alternative to a class action is for Class members to proceed through individual litigation against SkyWest, an impractical solution that would be inefficient and costly, would "unnecessarily burden the

judiciary," and could lead to inconsistent results. *Hanlon*, 150 F.3d at 1023; *Gentry v. Sup. Ct.*, 42 Cal. 4th 443, 462 (2007) (class actions guard against the prospect of "random and fragmentary enforcement" of the employer's legal obligations under California wage laws). SkyWest did not treat Class members individually in applying its pay practices; it does not make sense to adjudicate the legality of those practices individually either, especially given the inefficiencies of doing so.

### 2.      This Action Is Manageable as a Class Action.

Prosecuting this case on a class-wide basis is also the best course from a manageability perspective. SkyWest applies the same practices and policies to all members of the class; a single class definition will be operable for all claims Plaintiffs seek to certify; and all claims are susceptible to common proof. Further, while it is unnecessary to adopt a specific trial plan now, Plaintiffs submit that this case may proceed along a well-recognized path with a phased proceeding. As previously discussed, this Court has already analyzed Defendant's common policies and practices and determined their lack of compliance with California wage & hour requirements, leaving the submission of a post-certification Motion for Summary Adjudication to expand those findings to the class as a whole a matter of procedural formality.

Accordingly, the only genuine issue of dispute remaining to be adjudicated post-certification is the amount of monetary relief due to the Class. This will be accomplished through the presentation of data through experts as well as representative testimony utilizing the same process previously successfully utilized by the District Court in *Bernstein v. Virgin*. Here, as there, SkyWest possesses the data necessary to calculate individual Class members' damages; thus damages can be calculated on a class-wide—and precise—basis. As demonstrated in *Bernstein*, given the detailed data that SkyWest maintains which records flight attendants' duty time and flight time, damages can feasibly and efficiently be calculated. Even were that not the case, to the extent that SkyWest was required to and failed to maintain accurate payroll and time records, Cal. Labor Code §§ 226, 1174 and Wage Order 9-2001, § 7 would allow representative evidence, including employee testimony and statistical evidence as appropriate forms of testimony so that employees will have a means of proving their claims. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016); *Anderson v. Mt. Clemens Pottery*, 328 U.S.

680, 687-88 (1946); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 750 (2004); *Villalpando*, 2016 U.S.Dist. LEXIS 53773, at *19 (discussing and approving the use of representative evidence in class actions following *Tyson Foods*). As courts have noted, for purposes of certification, "Plaintiffs need only show a method of proving damages and impact through common proof—whether class members were actually damaged is a merits question . . . ." *Kamakahi*, 305 F.R.D. at 180 (emp. in orig.); *see Vaquero*, 2016 U.S. App. LEXIS 10365, at *13 (damage phase with surveys, sampling or special master did not defeat predominance)

This type of phased proceeding has been found appropriate for purposes of manageability. *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 539 (N.D. Cal. 2012). It is also well established that these forms of proof, whether offered individually or taken together, are sufficient to establish classwide liability and damages in wage and hour cases. *See, e.g., Anderson*, 328 U.S. at 687; *Villalpando*, 2016 U.S.Dist. LEXIS 53773, at *19; *Duran, Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 31 (2014) (noting that surveys and statistical sampling can be used to manage class actions); *Sav-On*, 34 Cal. 4th at 333 (affirming use of statistical sampling); *Bell*, 115 Cal. App. 4th at 750 (affirming use of sample of witnesses and expert statistical inference to arrive at aggregate award of class damages "as a matter of just and reasonable inference" where employer failed to keep proper time and payroll records for misclassified employees). The straightforward relief sought (wage calculations), and evidence regarding the same, is markedly less complicated than many other class actions that have been deemed manageable. This case is well-suited for class treatment.

## IV. **CONCLUSION**

Plaintiffs respectfully request that the Court grant the Motion for Class Certification in its entirety, or grant any other relief deemed just and proper.

Dated:  October 25, 2021                           Respectfully submitted,

THE BAINER LAW FIRM


By: */s/ Matthew R. Bainer*
    Matthew R. Bainer
    Attorneys for Plaintiffs